# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE L. JOE, | CASE NO. 1:05-CV-00244-OWW-LJO-P |
| Plaintiff, | ORDER REQUIRING PLAINTIFF TO EITHER FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE |
| v. | |
| ARNOLD SCHWARZENEGGER, et al., | |
| Defendants. | (Doc. 1) |

I.      Screening Order

A.      Screening Requirement

Plaintiff Michelle L. Joe ("plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on February 22, 2005.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this

1

1   standard, the court must accept as true the allegations of the complaint in question, <u>Hospital Bldg.</u>

2   <u>Co. v. Rex Hospital Trustees</u>, 425 U.S. 738, 740 (1976), construe the pleading in the light most

3   favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. <u>Jenkins v. McKeithen</u>, 395

4   U.S. 411, 421 (1969).

5           B.      <u>Plaintiff's Claims</u>

6                   A.      <u>Summary of Plaintiff's Allegations</u>

7           The events at issue in the instant action allegedly occurred at the Central California Women's

8   Facility in Chowchilla, where plaintiff is presently incarcerated.  Plaintiff names Governor Arnold

9   Schwarzenegger, California Department of Corrections Director Jeanne S. Woodford, Health Care

10  Division Director Renee Kanan, Dr. Augustine C. Mekkam, Dr. Sampeth Suryadevara, Dr. Lorraine

11  Goodwin, Dr. Shelley Kruse, and Does 1-20 as defendants.  Plaintiff is seeking money damages and

12  equitable relief.  Plaintiff alleges that defendants acted with deliberate indifference to her serious

13  medical needs, in violation of the Eighth Amendment.

14          In her complaint, plaintiff alleges that in 1997, she began experiencing lower back pain

15  associated with leg pain, swelling, and, on occasion, sciatic nerve pain on the right side.  Plaintiff

16  alleges that pursuant defendants Mekkam and Suryadevara's orders, Ultram, a non-narcotic pain

17  medication which had been prescribed to plaintiff for four months and which was the only effective

18  medication that had been given to plaintiff, was discontinued.

19          Plaintiff alleges that in April of 2002, plaintiff developed on-going stomach pain.  Non-party

20  Dr. Reynolds determined that further testing was warranted, ordered an MRI, x-rays, and lab work,

21  and referred plaintiff to an orthopedic surgeon and a neurologist on the basis that plaintiff might have

22  neuropathy.  Following Dr. Reynolds' transfer to another institution, defendant Mekkam cancelled

23  the referral to the specialists.

24          On or around June of 2002, plaintiff developed severe stomach pain accompanied by diarrhea

25  and vomiting.  Plaintiff was seen by non-party Dr. Berry, who determined that plaintiff may have

26  neuropathy, prescribed medication, ordered lab work, and referred plaintiff to specialists, including

27  a neurologist.  On or around August of 2002, plaintiff was seen by defendant Mekkam regarding her

28  test results, which revealed that plaintiff suffered from a Helicobacter pylori, or H. pylori, infection.

1    Plaintiff alleges that H. pylori is a bacteria that affects the lining of the stomach and if left untreated,

2    can lead to more serious gastrointestinal problems such as ulcers and stomach cancer.  Plaintiff

3    alleges that defendant Mekkam told her the MRI results were normal, but she observed that the

4    report found degenerative disk disease.  Plaintiff alleges that the condition had progressed since

5    previous x-rays were taken.  Plaintiff alleges that she was placed on anti-biotics and informed by

6    defendant Mekkam that pain medication was the only treatment for her back pain, but that he would

7    not prescribe any medication.  Plaintiff alleges she was provided with no relief and that when she

8    asked about being seen by a neurologist, defendant Mekkam said she was not ever going to be seen

9    by a neurologist and that her problems were all in her head.  Defendant then referred plaintiff to a

10   prison psychiatrist.

11       On or around August of 2002, plaintiff again began experiencing severe stomach and

12   abdominal pain, diarrhea, vomiting, and anorexia, and increased lower back and leg pain.  Plaintiff

13   was seen by non-party Dr. Pillar, who denied any follow-up testing for the H. pylori bacteria and

14   informed her that he was unable to prescribe any pain medication other than Tylenol per defendant

15   Mekkam's orders.

16       Plaintiff alleges that she continued to suffer from intermittent numbness in her hands and

17   legs, increased pain in her lower back and legs, and H. pylori bacterial infection symptoms.

18       Plaintiff alleges that on or around October 25, 2002, she was seen by defendant Goodwin,

19   who ordered a blood test to determine if plaintiff was suffering from a recurrence of the H. pylori

20   bacteria.  Plaintiff alleges that the test revealed a high level of the bacteria, but defendant refused to

21   treat plaintiff with the recommended antibiotics.  On or around November of 2002, plaintiff was

22   again notified by defendant Goodwin of the presence of a high level of the bacteria, but provided

23   with no treatment. Plaintiff alleges that in December of 2002, her severe stomach problems persisted

24   and she was unable to ingest food without experiencing severe pain, nausea, and diarrhea.  Plaintiff

25   alleges that she was again seen by defendant Goodwin, who refused to treat plaintiff or provide any

26   relief.

27       Plaintiff alleges that on or around January 20, 2003, she began vomiting and having bloody

28   diarrhea. Plaintiff took a stool sample to defendant Doe 1, a medical technical assistant, but she was

1    refused treatment.  Plaintiff alleges that she presented a request for treatment on January 21, 2003,

2    due to increased pain, vomiting and diarrhea.  Plaintiff was seen by defendant Doe 2, a registered

3    nurse, at the yard clinic, who told her it was highly unlikely she had a recurrence of H. pylori

4    bacteria, denied her treatment, and referred her to defendant Goodwin.  Defendant Goodwin

5    subsequently refused to see plaintiff but ordered a blood test.  Plaintiff alleges that on or around

6    January 29, 2003, she experienced severe stomach pain and bloody diarrhea for more than eight

7    hours.  Plaintiff was seen by defendant Doe 3, the registered nurse on duty at the yard clinic.

8    Defendant Doe 3 refused to see her, but told her to fill out a co-pay form and she would be placed

9    on the nurse's list.  Defendant Doe 3 also refused to give plaintiff a medical excuse from her job

10   assignment.

11         On or around February 5, 2003, housing staff contacted defendant Doe 2 and requested that

12   plaintiff be seen.  Defendant Doe 2 refused to see plaintiff and told her to fill out a co-pay form to

13   be scheduled for an appointment.

14         On or around February 2003, defendant Goodwin ordered a blood sugar level to rule out

15   diabetes as a cause of plaintiff's neuropathy.  Defendant Goodwin performed a finger prick test and

16   determined that plaintiff did not have diabetes, but no actual blood sugar testing was performed.

17         On or around September of 2004, defendant Kruse ordered a cervical x-ray and informed

18   plaintiff that the result revealed a crushed disk in her neck.  Plaintiff alleges that defendant refused

19   to prescribe any pain relievers despite plaintiff's legitimate medical condition and informed plaintiff

20   that she was precluded from prescribing the medication that had been effective in the past pursuant

21   to the orders of defendants Mekkam and Suryadevara.  Plaintiff also alleges that defendant refused

22   to refer her to a neurologist because there was no longer one on staff and refused to order a complete

23   blood sugar test, telling plaintiff she no longer had neuropathy.

24         Plaintiff alleges that her physical pain has increased over time to intolerable levels and has

25   been left untreated by defendants despite their knowledge that her medical conditions warrant

26   treatment and further evaluation.

27   ///

28   ///

1          2.      Legal Standard for Eighth Amendment Medical Care Claims

2          A prisoner's claim of inadequate medical care does not constitute cruel and unusual

3    punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical

4    needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard involves

5    an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms,

6    "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501

7    U.S. 294, 298 (1991)).  Second, the prison official must act with a "sufficiently culpable state of

8    mind," which entails more than mere negligence, but less than conduct undertaken for the very

9    purpose of causing harm. Farmer v. Brennan, 511 U.S. at 837.  A prison official does not act in a

10   deliberately indifferent manner unless the official "knows of and disregards an excessive risk to

11   inmate health or safety." Id.

12         In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's

13   civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere

14   'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

15   Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at

16   105-06.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical

17   condition does not state a valid claim of medical mistreatment under the Eighth Amendment.

18   Medical malpractice does not become a constitutional violation merely because the victim is a

19   prisoner." Estelle v. Gamble, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310,

20   1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other

21   grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Even gross

22   negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood

23   v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).  A prisoner's mere disagreement with

24   diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d

25   240, 242 (9th Cir. 1989).

26   ///

27   ///

28   ///

3.      Claims Against Defendants Mekkam, Suryadevara, Goodwin, Kruse, and Does 1-3

The court finds that plaintiff's allegations are sufficient to give rise to claims for relief under section 1983 against defendants Mekkam, Suryadevara, Goodwin, and Kruse.  Fed. R. Civ. P. 8. Although "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a s 1983 claim," Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted), the court cannot find, at this early stage in the proceedings, that plaintiff's claims are based on nothing more than her disagreement with the treatment provided. The needless suffering of pain may be sufficient to demonstrate further harm for the purposes of an Eighth Amendment claim.  Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).  Therefore, the refusal to provide plaintiff with effective pain medication may amount to deliberate indifference. Further, if plaintiff's medical condition warranted further treatment and evaluation and defendants knew this but failed to provide further care, defendants may have acted with deliberate indifference.

However, the court finds that plaintiff's allegations fall short of stating a claim under section 1983 against defendants Does 1-3.  Plaintiff's allegations establish that Does 1-3 were on duty at the facility yard clinic.  The Doe defendants' alleged refusal to provide treatment when she contacted them at the yard clinic is insufficient, without more, to support the claim that in turning her away, defendants "[knew] of and disregard[ed] *an excessive risk* to [plaintiff's] health or safety." Farmer, 511 U.S. at 837 (emphasis added).

4.      Claims Against Defendants Schwarzenegger, Woodford, and Kanan

The Eleventh Amendment bars damages actions against state officials in their official capacity.  See Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997); Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1996); Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacity.  See Hafer v. Melo, 502 U.S. 21, 30 (1991); Ashker v. California Dep't of Corrections, 112 F.3d 392, 394 (9th Cir.), cert. denied, 118 S. Ct. 168 (1997); Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992).  "Personal-capacity suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law.  See Kentucky v.

1  Graham, 473 U.S. 159, 165 (1988).  Where plaintiff is seeking damages against a state official, such

2  as in the instant action, this "necessarily implies" a personal-capacity suit because an official-

3  capacity suit would be barred.  See Cerrato v. San Francisco Community College Dist., 26 F.3d 968,

4  973 n.16 (9th Cir. 1994); Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284

5  (9th Cir. 1994); Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1991).

6           With respect to personal capacity suits against individuals such as the Governor, the Director

7  of CDC, and the Director of Health Care Services, liability for the actions of subordinate employees

8  may not be premised on a theory of respondeat superior.  When a named defendant holds a

9  supervisorial position, the causal link between him and the claimed constitutional violation must be

10  specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979);  Mosher v. Saalfeld,

11  589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  To support a claim for

12  supervisory liability under section 1983, plaintiff must allege some facts indicating that supervisory

13  defendants either: personally participated in the alleged deprivation of constitutional rights; knew

14  of the violations and failed to act to prevent them; or promulgated or "implemented a policy so

15  deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of

16  the constitutional violation.'"  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)(internal citations

17  omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Although federal pleading standards

18  are broad, some facts must be alleged to support claims under Section 1983.  See Leatherman v.

19  Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

20          Plaintiff has not alleged any facts demonstrating that defendants Schwarzenegger, Woodford,

21  or Kanan personally participated in the alleged deprivation of constitutional rights; knew of the

22  violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient

23  that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the

24  constitutional violation.'"  Hansen v. Black at 646.  For this reason, plaintiff fails to state a claim for

25  relief against these defendants under section 1983 for violating her rights under the Eighth

26  Amendment.

27  ///

28  ///

7

C.     Conclusion

The court finds that plaintiff's complaint contains cognizable claims for relief under section 1983 against defendants Mekkam, Suryadevara, Goodwin, and Kruse for violation of the Eighth Amendment.  However, the court finds that plaintiff's complaint does not contain any cognizable claims for relief under section 1983 against defendants Does 1-3, Schwarzenegger, Woodford, and Kanan.  The court will provide plaintiff with the opportunity to file an amended complaint, if plaintiff wishes to do so.

If plaintiff does not wish to file an amended complaint and wishes to proceed against defendants Mekkam, Suryadevara, Goodwin, and Kruse only, plaintiff may so notify the court in writing.  The court will then issue Findings and Recommendations recommending that the remaining claims and defendants be dismissed from this action, and will instruct plaintiff on initiating service of process.

In the event that plaintiff does wish to amend her complaint, plaintiff is advised Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a  general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Based on the foregoing, it is HEREBY ORDERED that:

1.      The Clerk's Office shall send plaintiff a civil rights complaint form;

2.      Within **thirty (30) days** from the date of service of this order, plaintiff must either:

8

1          a.      File an amended complaint curing the deficiencies identified by the court in

2                  this order, or

3          b.      Notify the court in writing that she does not wish to file an amended

4                  complaint and wishes to proceed only against defendants Mekkam,

5                  Suryadevara, Goodwin, and Kruse; and

6      3.  If plaintiff fails to comply with this order, this action will be dismissed for failure to

7          obey a court order.

8

9   IT IS SO ORDERED.

10  **Dated:   August 2, 2005**                    **/s/ Lawrence J. O'Neill**
    b9ed48                              UNITED STATES MAGISTRATE JUDGE